IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL S. WILSON, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 3:15-cv-01345-NJR-DGW |
| PINCKNEYVILLE MAILROOM STAFF, DONALD GAETZ, and WARDEN OF PINCKNEYVILLE, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Donald Gaetz and the Warden of Pinckneyville (Doc. 38). For the reasons stated below, the motion is granted.

## BACKGROUND

Plaintiff Michael Wilson brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 based on events that occurred while he was incarcerated at several Illinois correctional facilities. In the original complaint, Wilson alleged fifteen separate claims against twenty-five individual defendants (Doc. 1, p. 1). The Court conducted a preliminary review pursuant to 28 U.S.C. § 1915A, and severed the following three claims into this case:

**Count 4 -** dating from January 2013, unknown Pinckneyville mailroom staff "constantly" delayed or lost Plaintiff's regular and legal mail.

**Count 8 -** contains two allegations: (A) unknown Pinckneyville mailroom staff failed to send outgoing legal mail, thus violating Wilson's right to access the courts with reference to a pending detainer; and (B) Warden Gaetz denied Wilson access to the courts when he took no steps to inform Plaintiff of a detainer lodged against him, in retaliation for Plaintiff's earlier lawsuit against Defendant Gaetz.

**Count 11 -** Pinckneyville mailroom staff purposefully failed to send out Plaintiff's legal mail in order to hinder his search for counsel in Case No. 14-cv-71-NJR-DGW (S.D. Ill.).

(Doc. 1, p. 12).

Several of the claims relate to a detainer filed against Wilson by the Olmsted County Court in Minnesota. It is undisputed that while Wilson was a prisoner housed at Centralia Correctional Center, a warrant was issued against him in Olmsted County, Minnesota (Doc. 39, p. 2). Olmsted County requested Wilson be arrested, or detained if already in custody (Doc. 39-1, p. 33). Wilson was informed of the detainer while he was at Centralia (Doc. 19, p. 3).

Wilson was subsequently transferred to Pinckneyville in November 2011 (Doc. 39, p. 3), where Defendant Donald Gaetz was employed as the warden beginning the following month (Doc. 39, p. 3). It is undisputed that Wilson communicated with the Olmsted County Court in 2013 and was ultimately successful in having the charges against him dismissed (Doc. 39-1, p. 54).

With regard to claims against Pinckneyville Mailroom Staff, Wilson was informed he would have to specifically identify the members of the mailroom staff who were at

fault in order to proceed on his claims (Doc. 1, p. 13).[1] To aid in that effort, the Court added the Warden of Pinckneyville as a defendant in her official capacity to respond to Wilson's reasonable discovery requests (Doc. 1, p. 13).[2] On August 12, 2016, the Court entered a Scheduling Order setting a deadline—December 16, 2016—for Wilson to move to add or substitute specific defendants for the unidentified mailroom staff (Doc. 26, p. 3). None were ever substituted.

Over a year later, on August 28, 2017, Defendants Gaetz and the "Warden of Pinckneyville" filed the pending motion for summary judgment (Docs. 38, 39). On October 5, 2017, Wilson filed a motion asking for an extension of time to respond to the summary judgment motion (Doc. 42), and he was granted through November 2, 2017, to file his response (Doc. 43). To date, no response has been filed.

## ANALYSIS

### I. LEGAL STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In deciding a motion for summary judgment, "[a] court may not . . . choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and

---

[1] Although the requirement for identifying the individual mailroom staff was only referenced in the preliminary review of Count 4, the Court assumes it also intended that Wilson identify the mailroom staff responsible for the deprivations alleged in Counts 8 and 11.

[2] At this time, and at the time the motion for summary judgment was filed, Jacqueline Lashbrook was the Warden of Pinckneyville (*see* Docs. 14, 15, 18, 38). According to the State of Illinois' website, however, Karen Jaimet is now the Warden of Pinckneyville.
https://www2.illinois.gov/idoc/facilities/Pages/pinckneyvillecorrectionalcenter.aspx (last visited March 8, 2018).

resolve all factual disputes in favor of the non-moving party." *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *United States v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (alteration in original). "Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). If the non-moving party fails to properly support its assertion of fact or fails to properly address the moving party's assertion of fact, the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(2), (3).

## I. MAIL ROOM STAFF AND THE WARDEN

The majority of the pending claims allege violations of Wilson's constitutional rights by individuals in the Pinckneyville mailroom. Specifically, Wilson alleges

individuals in the Pinckneyville mailroom interfered with his non-legal mail by failing to post it in a timely manner, in violation of the First Amendment. In addition, Wilson alleges individuals in the Pinckneyville mailroom interfered with his access to the Courts by delaying the posting of mail related to his pending detainer (Doc. 1-2, p. 50; Doc. 1-3, pp. 1-4), and his attempts to secure representation in another case (Doc. 1-4, pp. 32-39).

The allegations in the original complaint were made against "Pinckneyville mailroom staff," but failed to specifically identify any staff members individually. Where a complaint states specific allegations describing unconstitutional conduct of individual prison staff members, but the names of those defendants are not known, courts generally allow the prisoner to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).

As set forth above, the Warden of Pinckneyville was added as a defendant to respond to Wilson's reasonable discovery requests aimed at identifying the individuals on the mailroom staff who were at fault. To date, Wilson has not identified those individuals. As a result, no individual defendants were ever served or given an opportunity to answer the allegations.

Consequently, the Pinckneyville mailroom staff is dismissed with prejudice from this action, which necessarily means that Counts 4, 8(A), and 11, which were directed at the mailroom staff, are likewise dismissed with prejudice. Further, because the Warden was added solely in her official capacity to assist in identifying the responsible members

of the mailroom staff, her purpose has been served, and she can also be dismissed from this action.

## II. WARDEN GAETZ

Wilson raises two allegations against Warden Gaetz, both contained in Count 8(B). The first allegation is that Gaetz denied Wilson access to the courts when he took no steps to inform Wilson of a detainer lodged against him (Doc. 1, p. 12). The second allegation is that Gaetz's failure to inform Wilson of the detainer was in retaliation for Wilson filing an earlier lawsuit against him (Doc. 1, p. 12).

### A. Access to Court

Inmates have a right to access the courts. *Bounds v. Smith,* 430 U.S. 817, 828 (1977). To prove a violation of that right, an inmate must prevail on a two-part test. *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir. 1992). First, the inmate must show prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* Second, the prisoner must generally show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of the plaintiff's pending or contemplated litigation." *Id.* Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Gentry v. Duckworth,* 65 F.3d 555, 559 (7th Cir. 1995). Delay alone is not enough. *Id.* Rather, prejudice occurs when the prison official's action causes the doors of the court to "be actually shut" to a plaintiff. *Id.*

Here, Wilson's claim fails on the second prong.[3] It is undisputed that in 2013 Wilson was able to send and receive correspondence, as well as file documents regarding the detainer with the Court in Olmsted County, Minnesota (Doc. 39-1, pp. 34-53). It is further undisputed that, as a result of that correspondence, the charges in Olmsted County were dismissed (Doc. 39-1, p. 54). Thus, even were Gaetz in some way responsible for a delay in Wilson responding to the detainer, the evidence shows Wilson suffered no actual prejudice. Not only did the doors of the Olmsted County Court remain open to Wilson, he was able to obtain a successful outcome. Thus, the Court finds Gaetz is entitled to summary judgment on the portion of Wilson's claim alleging he was denied access to the courts.

**B. Retaliation**

Prison officials may not retaliate against an inmate for exercising First Amendment rights, even if their actions would not independently violate the Constitution. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (citing *Howland v. Kilquist,* 833 F.2d 639, 644 (7th Cir. 1987)). To prevail on a First Amendment retaliation claim, a plaintiff must show: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006)).

---

[3] Gaetz argues that Wilson cannot prove he was denied adequate legal assistance, and therefore fails on the first prong of the *Jenkins* test as well (Doc. 39, p. 9). Because Wilson cannot prove the second element of the test, and thus fails to show denial of access to the courts, the Court finds it unnecessary to address the first prong of the test and related arguments raised by Gaetz.

Here, the first prong of the test is easily met. The filing of a lawsuit qualifies as a form of protected speech. *Bridges,* 557 F.3d at 551. Wilson cannot, however, meet the second prong of the test because he did not show that he suffered a deprivation likely to deter First Amendment activity in the future. As discussed above, the only harm to Wilson regarding the detainer was a possible delay—he was ultimately successful. To succeed on a retaliation claim, the deprivation must be so substantial it would deter a reasonable person from exercising his rights in the future. *Id.* at 546. The Court finds a delay that has no substantive impact on the outcome is not so substantial that it would deter a reasonable person from exercising a future exercise of his first amendment rights.

Wilson also cannot meet the third prong of the test. He has the burden of producing evidence that his speech was at least a motivating factor for Defendant Gaetz's retaliatory action; in other words, that absent the retaliatory motive, things would have occurred differently. *See Bridges*, 557 F.3d at 546; *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). This necessarily means that Wilson must show that Gaetz had actual knowledge of the protected conduct. *Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009). Here, Wilson alleges that a lawsuit he filed against Gaetz was a motivating factor in Gaetz's decision to not inform him about the detainer. There are two problems with this argument.

First, there is no evidence that Gaetz was even aware of the detainer. It is uncontested that Gaetz did not review individual inmates' files to determine whether there were pending detainers (Doc. 39, p. 3). Instead, the responsibilities relating to the Interstate Agreement on Detainers are handled by counselors and records office staff

(Doc. 39, p. 3). Accordingly, there is no evidence before the Court that Gaetz was even aware that a detainer was pending against Wilson. Further, it is uncontested that Wilson was notified of the detainer before he was transferred to Pinckneyville (Doc. 39, p. 3). Thus, the duty to inform Wilson of the detainer under the Interstate Agreement on Detainers, 730 ILCS 5/3-8-9, was discharged by the warden of Centralia, and the Court is unaware of any requirement that Wilson be informed of the detainer again upon transfer to a new facility.

The second problem is that the lawsuit that purportedly motivated Gaetz to retaliate against Wilson—*Wilson v. Gaetz*, Case No. 3:14-cv-00071-NJR-DGW (S.D. Ill.)—was filed on January 21, 2014, six months *after* Wilson began communicating with the Olmsted County Court (Doc. 39-1, pp. 34-38).[4] Because the lawsuit had not been filed at the time Gaetz allegedly retaliated against Wilson, it could not have served as a motivating factor for the retaliation.

Thus, the Court finds Gaetz is entitled to summary judgment on the portion of Wilson's claim alleging Gaetz's retaliated against him for exercising his First Amendment rights.

## Conclusion

The Motion for Summary Judgment (Doc. 38) is **GRANTED.** Judgment is **GRANTED** in favor of Defendant Donald Gaetz as to Count 8(B). The "Pinckneyville mailroom staff" is **DISMISSED with prejudice** as a Defendant in this action, which necessarily means that Counts 4, 8(A), and 11 are also **DISMISSED with prejudice**. The

---

[4] The Court can take judicial notice of the date on which a lawsuit was filed. *See* Fed. R. Evid. 201(b)

Warden of Pinckneyville is also **DISMISSED with prejudice** as a Defendant in this action.

There being no claims or Defendants remaining in this action, the Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

DATED: March 9, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**